# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SHOSHANA COOPER and SARA KUPER, | ) ) ) | |
| Plaintiffs, | ) ) | No. 12 C 5104 |
| vs. | ) ) | Judge Ronald A. Guzmán |
| CHICAGO POLICE OFFICER MONTE CASSIDY, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kuper seeks to call Dr. Bertram Kraft as an expert witness to opine that she "lost the vision in her right eye [due to central vein occlusion that occurred] following a period of acute blood pressure elevation in September 2011." (*See* Pls.' Resp. Mot. Bar, Ex. 1, Kraft Dep. at 33.) Defendant asks the Court to bar Kraft's testimony because he lacks the requisite expertise, his opinion is not based on sufficient data, and his opinion was not derived from a reliable methodology. *See* Fed. R. Evid. 702 (stating that a witness can testify as an expert if he has specialized knowledge that will help the jury understand the evidence or determine an issue, his testimony is based on sufficient data, and it is the product of a reliable methodology that has been reliably applied to the facts of the case.)

The record establishes that Kraft is an expert in the field of ophthalmology. He graduated from the University of Illinois College of Medicine in 1969, completed a medical internship in 1970, was a resident in ophthalmology at Michael Reese Hospital from 1970-1973, was Chief of Ophthalmology at the Ireland Army Hospital in Fort Knox, Kentucky from 1973-1975, was a clinical instructor at the University of Louisville from 1974-1975, and has been in private practice

ever since. (*Id.* at 10-23.) Kraft testified that the condition from which Kuper suffers, central vein occlusion, *i.e.*, "essentially a stroke of the eye," is one that he sees "all the time" but does not treat because it requires injection of medication directly into the eye, a procedure that only retinal specialists perform. (*Id.* at 59, 99-100.) Moreover, the record shows that: (1) Kraft diagnosed Kuper with central vein occlusion in her left eye, years before the events giving rise to this case, as well as the one that occurred in her right eye in September 2011; (2) retina specialist Schroeder concurred with both diagnoses; and (2) Schroeder agreed with Kraft that glaucoma, hypertension and coagulation disorders like Factor V Leiden are risk factors for central vein occlusion. (*Id.* at 43-44, 57-60, 80-81, 91-93, 97; Pls.' Resp. Mot. Bar, Ex. 2, Schroeder Dep. at 21-27, 30-31, 56.) Finally, defendant offers no evidence that suggests only a retinal specialist can diagnose or opine on the causes of central vein occlusion. Accordingly, the Court finds that Kraft has the requisite expertise to testify about the cause of Kuper's eye condition.

Defendant also attacks the factual basis for Kraft's opinion, which he said was the records of his and Schroeder's treatment of Kuper in 2011, his familiarity with Kuper and her medical history as a result of his decades-long doctor-patient relationship with her, and the statements Kuper made to him about her blood pressure. (Pls.' Resp. Mot. Bar, Ex. 1, Kraft Dep. at 38-41, 110-11, 139, 143.) Defendant argues that Kraft's reliance on Kuper's statements, rather than actual blood pressure readings, vitiates his opinion. The Court disagrees. As the Seventh Circuit explained in *Walker v. Soo Line R.R. Co.*, a medical expert's reliance on patient statements goes to the weight of his testimony, not its admissibility:

> Under *Daubert*, the first inquiry that must be undertaken is whether Dr. Pliskin relied upon a proper scientific methodology to determine Mr. Walker's pre-incident IQ. The record establishes that Dr. Pliskin's evaluation relied on the medical, educational and professional histories reported by Mr. Walker and Harris, and on his

> administration of the National Adult Reading Test, a test specifically designed to estimate a person's IQ before that person suffered a trauma. Medical professionals reasonably may be expected to rely on self-reported patient histories. *See Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1019-21 (7th Cir. 2000). Such histories provide information upon which physicians may, and at times must, rely in their diagnostic work. Of course, it is certainly possible that self-reported histories may be inaccurate. . . . In situations in which a medical expert has relied upon a patient's self-reported history and that history is found to be inaccurate, district courts usually should allow those inaccuracies in that history to be explored through cross-examination.

208 F.3d 581, 586 (7th Cir. 2000). In short, Kraft's acceptance of Kuper's statements may be fertile ground for cross-examination, but it does not make his opinion inadmissible.

Defendant further contends that Kraft's opinion should be barred because it was not formed pursuant to a reliable methodology. In fact, the method Kraft used was differential diagnosis, *i.e.*, "the accepted diagnostic tool of examination accompanied by physical history as related by the patient," *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1021 (7th Cir. 2000) (footnote omitted), the same as that used by Schroeder, whose opinion defendant lauds. Both doctors took information from Kuper, her medical records and her physical examinations, compared it to the undisputed risk factors for central vein occlusion – high blood pressure, clotting disorders and glaucoma – and reached a conclusion as to the probable cause of the central vein occlusion in her right eye. (*See* Pls.' Resp. Def.'s Mot. Bar, Ex. 1, Kraft Dep. at 38-41, 98-99, 110-11, 139, 143; *id.*, Ex. 2, Schroder Dep. at 21-37.) Moreover, though Kraft said the occlusion was likely caused by high blood pressure, while Schroeder said a clotting disorder was the likely culprit, each acknowledged that both conditions are risk factors for, and could have caused or contributed to, Kuper's condition. (*See* Pls.' Resp. Def.'s Mot. Bar, Ex. 1, Kraft Dep. at 113-14, 135, 138-39; *id.*, Ex. 2, Schroder Dep. at 54-56, 62, 65-67.) Thus, flawed methodology is not a basis for barring Kraft's testimony. *See Cooper*, 211 F.3d at 1021 (saying that the possibility that plaintiff's condition was "attributable to

3

a factor other than the fall" and "the accuracy and truthfulness of the underlying medical history" are "quite susceptible to exploration on cross-examination," and thus defendant's "contention that [plaintiff's] other conditions might have caused his [condition] goes to the weight of the medical testimony, not its admissibility"); *see Walker*, 208 F.3d at 589 ("That two different experts reach opposing conclusions from the same information does not render their opinions inadmissible.").

## Conclusion

For the reasons set forth above, the Court denies defendant's motion to bar the testimony of Dr. Bertram Kraft [77].

**SO ORDERED.**  **ENTERED:  December 4, 2014**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**